UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE NEW FORTRESS ENERGY INC.    :    24-cv-07032 (JGK)
SECURITIES LITIGATION           :
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED
## <u>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Sarah E. Danehy
Jemma M. Curtin
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
scott.musoff@skadden.com
sarah.danehy@skadden.com
jemma.curtin@skadden.com

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Joseph O. Larkin (*pro hac vice*)
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Facsimile: (302) 651-3001
joseph.larkin@skadden.com

*Counsel for Defendants New Fortress*
*Energy Inc., Wesley Robert Edens and*
*Christopher S. Guinta*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 4

      A.     The Company and Individual Defendants ............................................................ 4

      B.     The Company Announces FLNG 1 and Illustrative Adjusted EBITDA Goals ................................................................................................................... 5

      C.     NFE Fully Disclosed The Risks .......................................................................... 6

      D.     This Action ........................................................................................................... 9

ARGUMENT ....................................................................................................................... 9

I.      Plaintiffs Fail To Plead Any Actionable Misstatement or Omission ................................. 9

      A.     Forward-Looking Statements Protected by the PSLRA's Safe Harbor Provision ............................................................................................................. 10

      B.     Plaintiffs Have Insufficiently Alleged that Defendants' Statements Were Both False and Not Honestly Believed When Made ........................................... 15

      C.     General Statements of Corporate Optimism and Puffery .................................... 17

II.     Plaintiffs Fail to Plead a Strong Inference of Scienter .................................................... 17

      A.     Plaintiffs Fail to Plead a Cognizable Motive ...................................................... 18

      B.     Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness ........................ 19

      C.     Nonculpable Inferences Are More Compelling .................................................... 21

III.    Plaintiffs Fail To Plead Loss Causation ........................................................................... 22

CONCLUSION .................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) ........................................................................................... 17

*In re Adient plc Securities Litigation*,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020),
*aff'd sub nom. Bristol County Retirement System. v. Adient PLC*, 2022 WL
2824260 (2d Cir. July 20, 2022) ............................................................................. 13, 15

*In re Adobe Inc. Securities Litigation*,
No. 23-CV-9260 (JGK), 2025 WL 936416 (S.D.N.Y. Mar. 27, 2025) ............................ 4

*Akerman v. Oryx Communications, Inc.*,
810 F.2d 336 (2d Cir. 1987) ........................................................................................... 22

*In re Anheuser-Busch InBev SA/NV Securities Litigation*,
No. 19 Civ. 5854 (AKH), 2020 WL 5819558 (S.D.N.Y., 2020) .............................. 11, 12

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ............................................................................... 10, 11, 19

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .......................................................................................... 9, 22

*Campo v. Sears Holdings Corp.*,
635 F. Supp. 2d 323 (S.D.N.Y. 2009), *aff'd* 37 F. App'x 212 (2d Cir. 2010) ................ 13

*City of Brockton Retirement System v. Avon Products, Inc.*,
No. 11 Civ. 4665(PGG), 2014 WL 4832321 (S.D.N.Y. 2014) ...................................... 21

*City of Monroe Emps.' Retirement System v. Hartford Financial Services Group, Inc.*,
No. 10 Civ. 2835(NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ....................... 18

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ............................................................................ 20

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ....................................................................................................... 22

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ..................................................................................... 18, 19

*In re Elan Corp. Securities Litigation*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................................ 13

*In re Fed Ex Corp. Securities Litigation*,
    517 F. Supp. 3d 216 (S.D.N.Y. 2021) ...................................................................... 10, 17

*In re Ferrellgas Partners, L.P., Securities Litigation*,
    No. 18-1286, 2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x
    127 (2d Cir. 2019) ......................................................................................................20

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011) ............................................................. 18, 19, 20

*In re Hertz Global Holdings Inc.*,
    905 F.3d 106 (3d Cir. 2018)........................................................................................21

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021) ................................................................... 19, 22

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................................19

*Local No. 38 International Brotherhood of Electrical Workers Pension Fund v. American*
    *Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)................12

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) ........................................................................3, 19

*Martin v. Quartermain*,
    732 F. App'x 37 (2d Cir. 2018)........................................................................ 12, 15, 16

*NECA-IBEW Pension Trust Fund v. Bank of America Corp.*,
    No. 10 Civ. 440(LAK)(HBP), 2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012)...................17

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ..................................................................................................15

*In re Philip Morris International Inc. Securities Litigation*,
    437 F. Supp. 3d 329 (S.D.N.Y. 2020), *aff'd*, 89 F.4th 408 (2d Cir. 2023)................ 10, 17

*In re Piedmont Lithium Inc., Securities Litigation*,
    712 F. Supp. 3d 301 (E.D.N.Y. 2024) .................................................................... 20, 21

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of*
    *Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ........................................................................20

*Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies, Inc.*,
    548 F. App'x 16 (2d Cir. 2013)............................................................................. 10, 23

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).................................................................... 17, 18

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010).................................................................... 18

*Smith v. PureCycle Technologies Inc.*,
    No. 23-cv-8605 (JGK), 2024 WL 5186586 (S.D.N.Y. Dec. 20, 2024)
    .................................................................................2, 11, 16, 17, 21, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................... 4, 18, 21

*Villare v. Abiomed, Inc.*,
    No. 19 Civ. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) .................... 10, 17

*In re Wachovia Equity Securities Litigation*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................................................14

*In re Weight Watchers International, Inc. Securities Litigation*,
    No. 14-cv-1997 (LAK), 2016 WL 2757760 (S.D.N.Y. May 11, 2016) ........................14

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)....................................................................23

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A) .........................................................................17

Defendants New Fortress Energy Inc. ("NFE" or the "Company"), Wesley Robert Edens ("Edens") and Christopher S. Guinta ("Guinta") (together, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint" or "AC") (ECF No. 34) with prejudice pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

## PRELIMINARY STATEMENT

Plaintiffs bring this putative securities fraud class action for Defendants' alleged misstatements made in connection with NFE's multi-year effort to successfully develop an offshore fast liquified natural gas facility ("FLNG").  Though NFE primarily operates liquefied natural gas ("LNG") infrastructure and ships, it sought to expand its LNG supply capabilities by developing offshore FLNG facilities that would handle LNG production, storage, and offloading. Defendants believed these FLNGs would lower the cost of NFE's LNG supply and reduce its dependence on third parties who historically supplied LNG to NFE.

As NFE continuously disclosed, its FLNG development efforts were substantial, capital-intensive projects that carried significant risk.  As Plaintiffs are forced to concede, however, NFE's efforts ultimately bore fruit.  Indeed, the first FLNG ("FLNG 1")—the focus of Plaintiffs' ***entire*** complaint—***was successfully built*** and continues to drive value for the Company's stockholders. Plaintiffs attempt to spin a tale of woe about FLNG 1 in the hopes that the Court will somehow believe otherwise.  That is simply not the case.

Plaintiffs claim that Defendants misled investors with overly optimistic timelines for developing FLNG 1 and NFE's FY 2023 Illustrative Adjusted EBIDTA Goals.  This is nonsense. NFE expressly and continuously disclosed that its projected milestones were simply "estimates"

and detailed that it "***cannot assure you if or when such projects will reach***" announced milestones, including "when such projects will reach full commercial operations. ***Actual results could differ materially from the illustrations reflected in this press release and there can be no assurance we will achieve our goals***."  (Ex. A, at 3 n.4; *see also* Ex. B, at 3 n.5.)  NFE provided the same warnings for its Illustrative Adjusted EBITDA Goals.

The risks that NFE disclosed were precisely what materialized.  The Company steadily pushed back FLNG 1's various milestones, and decreased its FY 2023 Illustrative Adjusted EBITDA Goal from $2.5 billion, as forecasted in Q4 2022, ultimately to $1.6 billion, as forecasted in Q3 2023.  Critically, however, FLNG 1 ***was completed***, and by the end of the Class Period, was operational and producing LNG.  Plaintiffs contend that by repeatedly extending FLNG 1's development timeline and revising Illustrative Adjusted EBITDA Goals, NFE committed securities fraud.  This theory fails for multiple independent reasons.

<u>First</u>, Plaintiffs fail to allege any material misrepresentation or omission.  The alleged misstatements are protected by the PSLRA's safe harbor provision and are non-actionable opinions that were surrounded by cautionary language warning of the precise risk that Plaintiffs claim was concealed.  Indeed, NFE disclosed all the relevant information concerning its projections and promptly updated investors on construction progress, providing revised timelines each quarter.  NFE's disclosures did not become false or misleading simply because NFE did not achieve its initial targets.  *Smith v. PureCycle Techs. Inc.*, 2024 WL 5186586, at *1 (S.D.N.Y. Dec. 20, 2024) (Koeltl, J.) (dismissing section 10(b) claims where plaintiffs accused "defendants of being too optimistic in their public descriptions of the construction project" because company adequately "disclosed the risks").  Plaintiffs attempt to bolster their claims with snippets from former employee confidential witnesses ("CW" or "FE"), but none of these witnesses offers particularized

facts showing that Defendants knew these disclosures were false or did not honestly believe their estimates and projections. Even taken at face value, Plaintiffs' witnesses simply offer a glimpse into the day-to-day complexities associated with a project as ambitious and complex as FLNG 1. That is perfectly consistent with the risks NFE warned of. *See infra* § I.

Second, Plaintiffs fail to plead any facts that Defendants acted with the requisite strong inference of scienter. Indeed, Plaintiffs' sole allegation arises from NFE's decision to pay a one-time, $3.00 dividend in late 2022 that purportedly secured Edens a windfall. Plaintiffs' allegations make no sense. As alleged, Plaintiffs' theory that Edens—who was and remains the Company's largest stockholder—intentionally misled investors about FLNG 1's timing to pay himself a one-time dividend—only to see the value of his overall position decline precipitously (*see* AC ¶¶ 210-15) is counterfactual. *See, e.g., Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 779 (S.D.N.Y. 2021) ("[B]y retaining millions—or, in the case of [the CEO], hundreds of millions—worth of shares, the Individual Defendants [would be] *harmed* by the fraud they purportedly orchestrated, undermining any fraud theory."). Plaintiffs likewise fail to allege an extreme departure from standards of ordinary care that could approximate an intent to defraud. Again, their "witness" allegations fail to provide specific, particularized instances where information provided to Defendants undermined their projections. The only inference is that Defendants disclosed the risks associated with developing FLNG 1 and believed that their projections were realistic based on information known to them at the time. *See infra* § II.

Third, Plaintiffs fail to plead loss causation. The four purported corrective disclosures were either the materialization of the very risk that NFE warned or fail to disclose any new, negative information to investors. Critically, NFE's July and August 2024 disclosures revealed that FLNG

1 ***was completed and had produced LNG***.  This fails to allege a causal connection between the material misrepresentation and the loss, independently warranting dismissal.  *See infra* § III.

**STATEMENT OF FACTS[1]**

**A.    The Company and Individual Defendants**

NFE "is a global energy infrastructure company founded to help address energy poverty and accelerate the world's transition to reliable, affordable, and clean energy."  (Ex. D, at 4.) Founded in 2014, NFE "owns and operates natural gas and [LNG] infrastructure, ships and logistics assets to rapidly deliver turnkey energy solutions to global markets."  (Ex. E, at 7.) Separate from the Company's core operations were a series of "Development Projects," including NFE's (1) FLNG technologies and (2) LNG terminal facilities in Nicaragua, Brazil and Ireland. (Ex. F, at 56.)

NFE believed its FLNG projects would be "faster and more economical to construct than many traditional liquefaction solutions" and would lower costs of NFE's LNG supply.  (*Id.* at 56, 60.)  As of February 2023, NFE had planned projects in Altamira, Mexico, Louisiana, and Lakach, Mexico.  (*Id.* at 57.)  The Complaint solely focuses on the project planned for Altamira.

Edens is the founder, Chairman and CEO of NFE.  (AC ¶ 17.)  Guinta is NFE's CFO.  (*Id.* ¶ 18.)

---

[1] The facts are drawn from the AC and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also In re Adobe Inc. Sec. Litig.*, 2025 WL 936416, at *7 (S.D.N.Y. Mar. 27, 2025) (Koeltl, J.) (noting the Court can take judicial notice of SEC filings).  All citations and internal quotation marks are omitted, and all emphasis is added, unless otherwise indicated.

**B.**    **The Company Announces FLNG 1 and Illustrative Adjusted EBITDA Goals**

On July 5, 2022, NFE announced FLNG 1, explaining it planned to build a LNG offshore hub in the Gulf of Mexico.  (Ex. G, at 5.)  FLNG 1 was to be constructed in Texas and then deployed to its offshore location in Altamira.  (Ex. H, at 1.)  Two months later, NFE disclosed FLNG 1's expected construction, deployment, and operational timelines.  (Ex. I, at 1.)  This process included three main phases: (1) "mechanical completion"; (2) "First Gas" or "First Cargo"; and (3) commercial operations date ("COD"), "Operational" or "Deployment."  (*See, e.g.*, Ex. A, at 3.)

In September 2022, Defendants disclosed that they "***expect[ed]*** to achieve mechanical completion" in March 2023, with expected deployment in mid-2023.  (Ex. I, at 1.)  As FLNG 1's development progressed, the timelines shifted gradually, and Defendants provided revised estimates each quarter.  (*See* Ex. J, at 8-9 (***estimated*** mechanical completion in May 2023, First Gas in July 2023 and COD in August 2023); Ex. C, at 1 ("We … ***anticipate*** First Gas and COD in July 2023 and August 2023"); Ex. K, at 5 ("we ***expect*** to introduce first gas in September and sell our first cargo in October of 2023"); Ex. L, at 2 ("First LNG and COD ***expected*** by the end of [Q4] 2023"); Ex. B, at 1 ("we successfully placed our first unit into its location and are now ***expecting*** first LNG in March and First Cargo in April 2024"); Ex. M, at 1 ("First LNG expected later this month and first full cargo expected in June"); Ex. N, at 1 ("First LNG in the coming days and First Cargo in July").)

Though delayed, NFE announced that FLNG 1 achieved mechanical completion in August 2023, First Gas in July 2024, and COD in August 2024.  (*See* AC ¶¶ 146, 171, 183 (FLNG 1 "is now operational"); *see also* Ex. K, at 5-6; Ex. O, at 5; Ex. N, at 1; Ex. P, at 1 ("we have now produced LNG").)

NFE's Illustrative Adjusted EBITDA Goals were likewise revised throughout the Class Period.  On November 2, 2022, NFE announced an Illustrative Adjusted EBITDA Goal of $2.5 billion for FY 2023.  (Ex. Q, at 1.)  As Defendants disclosed, that forecast changed as new information concerning FLNG 1's anticipated deployment, among other things, came to light.  (*See, e.g.*, Ex. J, at 14 ("the difference [in the revised $2 billion] is really just FLNG timing and the downstream execution"); Ex. K, at 4 (change to $1.6 billion for FY 2023 is "a function of a few of the projects delivering late")).  Ultimately, for FY 2023, NFE "produced nearly $1.3 billion in total adjusted EBITDA, which [was] up 20% from 2022."  (Ex. Y, at 10.)

On August 9, 2024, one day after the purported Class Period ended, NFE announced Q2 2024 results.  Though NFE disclosed that FLNG 1 delays cost NFE "approximately $150 million per quarter in lost operating margin," NFE confirmed that FLNG 1 was "in service as of July 19 and performing as expected," was "the fastest large-scale LNG project ever developed," and would "enabl[e] significant reductions in future capital expenditures."  (Ex. R, at 1.)[2]

## C.    NFE Fully Disclosed The Risks

Throughout the Class Period, Defendants clearly communicated FLNG 1's development stages and the associated risks:

- "Mechanical Completion" meant NFE "completed construction and certain subsystems [were] ready to be handed over to the commissioning team," but cautioned that "***[t]here may be several mechanical completion milestones***" and there is "no assurance … that we will be able to complete a project and begin

---

[2] Plaintiffs suggest that as of November 2024, the Company "had a substantial doubt about its ability to remain a going concern."  (AC ¶¶ 7, 188.)  However, that risk was extinguished in Q4 2024 when the company "repaid all of the 2025 Notes."  (Ex. S, at 75.)

operations even if a project has reached mechanical completion." (*See, e.g.*, Ex. A, at 3 n.5.)

- "First Gas" or "First Cargo" was defined as "***management's current estimate*** of the date on which[] natural gas ***is expected***" and included cautioning language that "[f]ull commercial operations … will occur later than, and may occur substantially later than, the First Gas date. ***We cannot assure you if or when such projects will reach the date of delivery of First Gas, or full commercial operations***." (*See, e.g.*, Ex. B, at 3 n.5.)

- "COD" was defined as:

  we ***expect*** gas to be made available within sixty (60) days. … Where … full commercial operations have not yet begun, full commercial operations will occur later than, and may occur substantially later than, our reported Operational, Completion or Deployment date, and we may not generate any revenue until full commercial operations has begun. ***We cannot assure you if or when such projects will reach full commercial operations. Actual results could differ materially from the illustrations reflected in this press release and there can be no assurance we will achieve our goals***.

  (*See, e.g.*, Ex. A, at 3 n.4;  Ex. T, at 3 n.4 (changes "60 days" to "in the near future").)

The Company made specific, tailored forward-looking risk warnings in each press release, including "illustrative financial metrics;" "expectations regarding the construction, completion and commissioning (including First Gas) of our projects on time and within budget;" and "the successful development and deployment of our Fast LNG liquefaction technology on time…" (Ex. D, at 5; *see also* Ex. T, at 6; Ex. L, at 4-5; Ex. P, at 1.)

In addition to general warnings that the statements were "estimates based upon current information and involve a number of risks" and that "[a]ctual results or events may differ materially from the results anticipated in these forward-looking statements," the Company also included "specific factors" that could impact actual results. (Ex. D, at 5.) These specific factors

included "***construction and operational risks*** … including cost overruns and delays" (*id.*); "***risks related to the development, construction, completion or commissioning schedule for the facilities***" (Ex. C, at 4); "***risks related to the timing and amounts of first LNG*** and first cargo … ; operation of the Company's first [FLNG] liquefaction facility…" (Ex. N, at 1); and "unknown and unforeseen ***risks related to*** the Full commercial operation for our first LNG Asset, ***delays and schedule changes*** …" (Ex. P, at 1).

Contrary to Plaintiffs' claim that Defendants misled investors regarding FLNG 1's completion date, NFE continuously disclosed that the ultimate timing would impact Illustrative Adjusted EBITDA Goals.  (*See* Ex. U, at 10 (the "variability" in the estimates "relates to when the FLNG turns on" and though Defendants "believe[d] strongly in the timelines, … a month or 2 or 3 can make a difference."); Ex. J, at 14 (the decrease in Illustrative Adjusted EBITDA Goal was due to "FLNG timing and the downstream execution"); Ex. K, at 4 ("Little bit of reduction of guidance for this year just as a function of a few of the projects delivering late").)  Even as of December 2022, Defendants emphasized that though they "mitigate a substantial amount of [their] risk through a variety of different measures," there is nonetheless "variability."  (*See* Ex. U, at 10 ("the most significant variability … is in the second half of the year … and that just simply relates to when the FLNG turns on.").)

Defendants likewise cautioned that their dividend policy was subject to change.  Though Defendants announced a $3.00 dividend in December 2022, they emphasized the "goal" was "to pay a dividend twice a year" and that "***[t]he declaration and payment of dividends … is at the discretion of our board of directors and there can be no assurance that we will continue to pay***

*dividends in amounts or on a basis consistent with prior distributions to our investors, if at all.*"[3]

(Ex. F, at 48; *see also* Ex. D, at 3 n.8.)

**D.    This Action**

Despite FLNG 1's ultimate success, Plaintiffs filed suit, claiming they were defrauded based on Defendants' alleged misstatements between September 20, 2022 through August 8, 2024 about FLNG 1's timing and projected Illustrative Adjusted EBITDA Goals.  Plaintiffs filed the Amended Complaint on February 19, 2025.

## ARGUMENT

Plaintiffs' claims are subject to Rule 9(b) and the PSLRA's heightened pleading requirements.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  On a motion to dismiss, the Court assumes that all well-pled factual allegations are true, but "[a]llegations that are conclusory or unsupported by factual assertions are insufficient."  *Id.*  The Complaint should be dismissed because it fails to plead any facts—much less particularized facts—to establish (i) a material misrepresentation, (ii) scienter, and (iii) loss causation.

**I.    PLAINTIFFS FAIL TO PLEAD ANY ACTIONABLE MISSTATEMENT OR OMISSION**

The crux of the Complaint is that NFE misled investors about (1) the "*expected*" timing of FLNG 1's development and (2) its Illustrative Adjusted EBIDTA "*Goals*."  Each claims fails.

---

[3] Plaintiffs' claim that NFE "financed the dividend by drawing $700 million from its credit facility" (*see* AC ¶¶ 4, 213-14) is further refuted by NFE's disclosures.  NFE paid the dividend in January 2023, and the $700 million was used *during* Q1 2023 "primarily… to fund the ongoing development of [FLNG 1]."  (Ex. V, at 41.)

A.    **Forward-Looking Statements Protected**
      **by the PSLRA's Safe Harbor Provision**

As an initial matter, all of the challenged disclosures concerning "expectation[s]" of FLNG 1's timing and NFE's Illustrative Adjusted EBITDA "projection[s]" were "plainly forward looking under [the PSLRA]." (*See* AC ¶¶ 109-72.) *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 548 F. App'x 16, 18 (2d Cir. 2013); *see also Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *17 (S.D.N.Y. Sept. 21, 2021) (collecting cases holding that financial projections and statements about being "on track" with goals or future plans were forward looking). Under the PSLRA, "a defendant 'shall not be liable with respect to any forward-looking statement' if (1) [it] is 'identified' as such and 'accompanied by meaningful cautionary statements,' or (2) [it] is 'immaterial,' or (3) the plaintiff 'fails to prove that [a] forward looking statement … was made with actual knowledge'" of falsity. *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 232 (S.D.N.Y. 2021). Because liability attaches "only upon proof of knowing falsity," the "scienter requirement for forward-looking statements is stricter than for statements of current fact." *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 355-56 (S.D.N.Y. 2020).

First, each of the challenged statements were identified as forward-looking and accompanied by meaningful cautionary language. NFE specifically cited NFE's "ability to achieve [its] Illustrative Adjusted EBITDA Goal" and "expectations" concerning FLNG 1's timelines as forward-looking. (*See, e.g.*, Ex. D, at 5; Ex. L, at 4-5; Ex. N, at 1.) Plaintiffs' assertion that NFE misled investors about these risks is undercut by the disclosures themselves, which warned of the precise risks that materialized. *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (dismissing allegations where "the relevant risk … was fully disclosed.").

Importantly, these were not "boilerplate" warnings.  NFE identified certain "specific factors that could cause actual results to differ materially."  *See PureCycle*, 2024 WL 5186586, at *8.  NFE disclosed risks related to, for example, "the development, construction, completion or commissioning schedule for the facilities;" "the timing and amounts of first LNG and first cargo;" "operation of [FLNG 1];" and "the Full commercial operation for [FLNG 1], delays and schedule changes."  (Ex. C, at 4; Ex. N, at 1; Ex. P, at 1.)  The Company also warned that NFE "cannot assure you if or when such projects will reach the date of delivery of First Gas, or full commercial operations."  (Ex. B, at 3 n.5; *see also* Ex. A, at 3 n.4.)  Moreover, Defendants communicated that FLNG 1's timing would impact NFE's Illustrative Adjusted EBITDA Goals.  *See supra* § C.

This Court recently dismissed securities fraud claims premised on precisely the same fact pattern here, rejecting plaintiff's allegations that PureCycle's disclosures failed to adequately disclose issues encountered during the construction of a novel recycling technology facility.  *See PureCycle.*, 2024 WL 5186586, at *1, *7-8.  The Court dismissed these claims because—like here—the company "warned of the potential risks that later materialized …, including: unexpected construction problems, … and further unexpected construction delays." *Id.* at *9.  The Court emphasized that "a reasonable investor could not have been misled into thinking that the risks that materialized during the Class Period did not actually exist." *Id.*  *See also Arkansas Pub. Emps. Ret. Sys.*, 28 F.4th at 354-55 (dismissing forward-looking "predictions regarding the [drug] trial's success and [] speed to market").

Plaintiffs' allegations concerning Defendants' "goal" of paying a dividend twice a year likewise fail, because Defendants specifically warned it was not guaranteed.  (*See* AC ¶ 121; *supra* § C.)  *See In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 2020 WL 5819558, at *5 (S.D.N.Y. Sept. 29, 2020) ("statements merely expressing a plan or desire to sustain dividends, in contrast to

11

statements guaranteeing dividends" are non-actionable forward-looking statements).  During the December 2022 special investor call Edens answered an analyst's question by stating that the forecasted dividend "is not really forward-looking."  (AC ¶ 121.)  But such statement is *not* a guarantee that a $3.00 dividend will be paid at a future time.  *See Anheuser-Busch InBev*, 2020 WL 5819558, at *4 (noting that courts have dismissed claims where "CEO said the company would only abandon [] dividend policy 'over his dead body.'").  Here, it is clear that Edens was discussing the dividend not as a guarantee, but in terms of what "we think the future holds."  (AC ¶ 121 (several months "can make a difference" in terms of the "plan" for when "FLNG turns on.").)  *See Martin v. Quartermain*, 732 F. App'x 37, 41-42 (2d Cir. May 1, 2018) (a court "must consider the statements at issue in light of all [] surrounding text, including hedges [and] disclaimers").

<u>Second</u>, the Complaint has not (and cannot) sufficiently allege that the Individual Defendants had actual knowledge that their statements were false when made.  Plaintiffs primarily rely on CWs to support allegations that Defendants "misrepresented the status of the FLNG unit … and, in turn, New Fortress' ability to generate revenue from it."  (AC ¶¶ 59.)  But none of the CW allegations, alone or in tandem, shows that Defendants had actual knowledge that their statements were false when made.  At most, they show that FLNG 1 was a challenging project that carried substantial risk—all of which was disclosed to investors.

As an initial matter, all twelve CWs were low level employees who neither reported to an Individual Defendant nor had insight into the overarching timelines governing all phases of FLNG 1's development.  (*See id.* ¶¶ 23-46.)  *See Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discounting allegations of "low-level" employees with no "access to aggregated data").  Critically, only FE8, FE11 and FE12 are alleged to have had any direct contact with an Individual Defendant.  (AC ¶¶ 98, 200-01, 206.)

12

*Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 335 (S.D.N.Y. 2009).  None of these three CWs, however, claims to have had any specific conversation with an Individual Defendant about project timelines, Illustrative Adjusted EBITDA Goals, or the Company's related disclosures.  And none alleges that either Individual Defendant was ever told that the projected timelines were unreasonable.  In fact, the communications are either unrelated to the purportedly fraudulent timelines (*see* AC ¶ 200 (alleged meeting with Edens concerned "allegations of misconduct among workers and staff"))[4] or fail to provide ***any*** specifics regarding what precise information Defendants were given (*see* AC ¶¶ 199, 201 (claiming only to have "provided regular project updates to Edens through WhatsApp")).  *See In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008) (dismissing CW allegations that did not establish "what information was actually communicated and what conclusions any defendant actually reached").

Plaintiffs' reliance on FE11's alleged statement that "[b]y January 2024 [and even as of June 2024], Guinta instructed FE11 to delay service contracts due to uncertainty over when operations would begin" is unfounded.  (AC ¶ 98.)  Having "uncertainty" does not equate to actual knowledge.  In fact, FLNG 1 ***did achieve*** first gas in July 2024, just one month after the purported "uncertainty," with commercial operations commencing in August 2024.  (*See id.* ¶ 7 ("the Company finally announced at the tail end of the Class Period that production had commenced").)  *See In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) (dismissing statements where "there appears to be no dispute that Adient achieved certain aspects of its [plan]").

---

[4] Though FE8 allegedly "doubted the timelines New Fortress was giving the public," there is no allegation that this belief was conveyed to—or held by—an Individual Defendant.  (AC ¶ 94.)  The same is true of FE10, who left the project in December 2023.  (*Id.* ¶ 74.)

In addition, the CW allegations are insufficiently vague because they "are either undated or pegged to an indefinite time period." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011). (*See, e.g.*, AC ¶¶ 67-68, 70, 73-74, 80, 82, 93-94, 202.) Some allegations assert that construction was purportedly unfinished when FLNG 1 was shipped offshore in July 2023. (*See id.* ¶¶ 66, 71, 73, 79-81, 83-84, 86-88, 91.) But no CW speaks to the status of mechanical completion—Defendants' defined term—especially as it stood in August 2023 when NFE announced it had achieved that milestone.

The remaining dated allegations likewise fail to plead that the projections were actually false. Several allegations complain that commissioning work remained outstanding as of February 2023 and January 2024 (*see id.* ¶¶ 66, 102, 105; *see also* ¶ 99), but as of these dates, Defendants did not provide commissioning projections. Other allegations complain that as of November 2023 certain compliance systems "were not working" (*id.* ¶ 91), that between February-April 2024 work remained ongoing (*id.* ¶¶ 94, 100, 105) or that "in February 2024 … [the project] was still in the pre-commissioning phases" (*id.* ¶ 104). None of this, however, is alleged to have been communicated to an Individual Defendant during these time frames, nor is it alleged that any of these purportedly outstanding tasks impacted the completion date.

Finally, the CW allegations concerning a "chaotic" or "mess[y]" work environment (*see id.* ¶¶ 66, 80, 88, 91, 110-11) are at most, criticisms of project management, which are simply "a characterization or opinion of the witness, not an objectively testable statement of fact."[5] *In re Weight Watchers Int'l, Inc. Sec. Litig.*, 2016 WL 2757760, at *6-7 (S.D.N.Y. May 11, 2016); *see*

---

[5] FE12's allegation that NFE "created an illusion [of] progress" during the November 2022 investor day (*see* AC ¶¶ 75, 115) is not only a subjective opinion, but is also devoid of allegations that such "illusion" was intended or designed by an Individual Defendant.

*also Adient plc Sec. Litig.*, 2020 WL 1644018, at \*15 ("CW's subjective views" are insufficient to support a claim).

**B.**    **Plaintiffs Have Insufficiently Alleged that Defendants' Statements Were Both False and Not Honestly Believed When Made**

Statements about estimated timelines and Illustrative Adjusted EBITDA Goals are also non-actionable opinions subject to the standard set forth in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).[6]  *See Martin*, 732 F. App'x at 40, n.1 ("Expressions of optimism and projections about the future are quintessential opinion statements.").  The Complaint should be dismissed because it does not offer any particularized facts showing that "the speaker did not hold the belief she professed," "the supporting fact[s] [the speaker] supplied were untrue," or the statements "omit[] material facts about the [speaker's] inquiry into or knowledge concerning [the opinion]. . .that conflict with what a reasonable investor would take from the statement itself."  *Omnicare*, 575 U.S. at 186, 189.

<u>First</u>, there are no well-pled, non-conclusory allegations that Defendants did not believe their forecasted timelines or Illustrative Adjusted EBIDTA Goals.  (*See, e.g.*, AC ¶ 126.)  Again, Plaintiffs rely on insufficiently pled CW allegations, and "[n]otably, there are no specific allegations regarding Defendants' beliefs at the time the alleged statements were made." *Villarae*, 2021 WL 4311749, at \*20 ("[N]one of the confidential witnesses is alleged to be the maker of any

---

[6] Plaintiffs also challenge statements from November 2023 that NFE's team "has done a phenomenal job … methodically and safely commissioning critical equipment"—another quintessential opinion (AC ¶ 155) and from February 2024 claiming FLNG 1 was "days away from having proof of concept."  (*Id.* ¶¶ 137-38).  For the same reasons stated *supra* § I.B., these claims also fail.

of the alleged misstatements, and it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant").

Second, Plaintiffs have failed to allege that the supporting facts supplying Defendants' opinions were untrue.  For example, during several earnings calls, Individual Defendants detailed the current status of construction and commissioning, and notably, none of the CWs refutes that this progress had been made.  (*See e.g.*, AC ¶¶ 119, 130, 143, 149, 155, 160, 167; *see also supra* §§ B; I.A.)  Plaintiffs also allege that Defendants falsely claimed that NFE "ha[s] developed an efficient and repeatable construction process … that substantially reduces the cost and time to build incremental liquefaction capacity" (*see* AC ¶¶ 109, 114), that as of August 2023, Defendants were "in the process of commissioning various systems" (*id.* ¶ 149) or "in the final stages of commissioning" (*id.* ¶ 160), and that in June 2024, "the work necessary to begin operations is complete" (*id.* ¶ 169).  But again, Plaintiffs have failed to provide any specific, particularized facts contradicting these statements.

Finally, Plaintiffs are no more effective in accusing Defendants of "omit[ting] information that makes the [opinion] statement misleading to a reasonable investor."  *Martin*, 732 F. App'x at 40.  Critically, "[a]n opinion … is not [] misleading [simply because] an issuer knows, but fails to disclose, some fact cutting the other way."  *Id.*  Plaintiffs complain that Defendants failed to disclose that the timelines "had no reasonable basis and were internally known to be unrealistic" and that using "repurposed" jack-up rigs and "failing to take standard safety measures" would cause further delays.  (*See, e.g.*, AC ¶¶ 126, 129, 131.)  Again, NFE disclosed risks concerning construction delays and consistently warned that it "could not assure" investors when projects would actually meet various milestones.  *See supra* §§ C; I.A.  *See PureCycle*, 2024 WL 5186586,

at *12 ("Because the defendants had previously warned investors about these later-materialized risks, there were no material omissions").

At most, Plaintiffs' allegations amount to vague, unparticularized criticisms of corporate management or Plaintiffs' own disagreement about the appropriate timing of FLNG 1.  *See, e.g.*, *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, 2012 WL 3191860, at *15 (S.D.N.Y. Feb. 9, 2012) (allegations "merely show that the company may have made bad predictions.").  "As the Second Circuit has held, 'misguided optimism is not a cause of action, and does not support an inference of fraud.'"  *In re Philip Morris*, 437 F. Supp. 3d at 357.

## C.    General Statements of Corporate Optimism and Puffery

Finally, many of the challenged statements are merely inactionable "[g]eneric, indefinite statements of corporate optimism." *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020).  "People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future…" *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  Here, several challenged statements simply reflect management's optimism about the FLNG initiative. This is quintessential puffery, insufficient to state a claim.  (*See, e.g.*, AC ¶¶ 117, 119 ("making excellent progress" and "rapidly approaching completion"), 121 ("We feel very good about our forecast"), 125 (construction is "progressing rapidly"), *see also id.* ¶¶ 128, 132, 146, 155, 169.)  *See PureCycle*, 2024 WL 5186586, at *10 (feeling "very confident" inactionable puffery); *Villare*, 2021 WL 4311749, at *13 ("expand rapidly" inactionable puffery); *Fed Ex. Corp. Sec. Litig.*, 517 F. Supp. 3d at 236 ("we are progressing well" inactionable puffery).

## II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs also fail to plead scienter.  Plaintiffs must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is "a mental state embracing intent to deceive, manipulate, or defraud."

*Tellabs*, 551 U.S. at 319. Plaintiffs must make this showing "with respect to *each* defendant." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011). This is a high bar: the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010). Plaintiffs must allege particularized facts "showing (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355. Neither showing is met here.

## A.    <u>Plaintiffs Fail to Plead a Cognizable Motive</u>

To plead motive, Plaintiffs must allege that Defendants "benefitted in some concrete and personal way from the purported fraud." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

Plaintiffs' sole allegation of motive is that in December 2022, Edens—the Company's largest stockholder—approved a $3.00 dividend that purportedly secured himself a short-term windfall. (*See* AC ¶¶ 209-215.) This is counterfactual. Edens was and remains NFE's largest stockholder, and stood to lose the most in the event NFE's stock declined. *See Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) ("defendants were among Family Golf's largest shareholders and shared the pain when the company failed"); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) ("It defies reason" and "raises precisely the contrary inference from [fraud]" that a person would "hold close to ninety percent of [their] shares as share prices fell"). Indeed, the

Complaint is devoid of any allegation that an Individual Defendant benefited from any stock sales, further undermining Plaintiffs' theory.[7]  *Glaser*, 772 F. Supp. 2d at 592-93.

**B.**    **Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness**

Because Plaintiffs cannot plead motive, their allegations of conscious misbehavior or recklessness "must be correspondingly greater." *Arkansas Pub. Emps. Ret. Sys.*, 28 F.4th at 355. "To plead recklessness through circumstantial evidence, Plaintiffs would have to show, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *ECA*, 553 F.3d at 202-03.

<u>First</u>, as detailed *supra* § I.A, Plaintiffs' insufficient CW allegations do not support a strong inference of scienter.  Not a single CW is alleged to have reported to any Individual Defendant and only three are alleged to have communicated with one.  (*See* AC ¶¶ 197-208.)  *See Maloney*, 518 F. Supp. 3d at 780-81 ("In the absence of direct personal contact, Plaintiffs must demonstrate scienter by other means.").   Allegations that Edens "attended meetings," received "project updates" or that Edens and Guinta were "hands-on" are far too generalized and do not supply what conflicting information a CW provided to Edens or Guinta at the time of any alleged misstatements.[8]  (AC ¶¶ 197-98, 202-03.)  *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 557 (S.D.N.Y. 2021) (Koeltl, J.) ("[W]here plaintiffs contend defendants had access to contrary facts, they must

---

[7] To the extent Plaintiffs attempt to allege scheme liability based on the dividend (AC ¶¶ 209-15), this too fails.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) ("[W]here the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c)").

[8] FE4—who left NFE **before** the announcement of the FLNG 1 project—has not (and cannot) allege what discussions occurred at purported "executive management meetings" during the purported Class Period.  (AC ¶ 203.)

specifically identify the reports or statements containing this information"). Plaintiffs fail to adequately allege that the Defendants received any internal report, communication, or other information contradicting Defendants' statements. (*See* AC ¶¶ 191-223.) Similarly, FE11's allegation that "Guinta instructed" him to defer signing service agreements (*id.* ¶ 206) likewise fails, as it does not contradict NFE's contemporaneous disclosures. (*See id.* ¶¶ 167, 169.)

<u>Second</u>, Plaintiffs' position-based allegations fail (*id.* ¶ 20), because "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Loc. 773 Pension Find v.Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010); *see also Glaser*, 772 F. Supp. 2d at 588 (allegations that "Defendants *must have known*" insufficient).

<u>Third</u>, Plaintiffs' "core operations" argument falls flat (*see* AC ¶¶ 191-196), as it "typically applies where the operation in question constitute[s] nearly all of a company's business." *In re Piedmont Lithium Inc., Sec. Litig.*, 712 F. Supp. 3d 301, 323 (E.D.N.Y. 2024). Despite Plaintiffs' claims to the contrary, FLNG 1 was only one of several development projects, and not a "core" element of the Company's business. (*See* Ex. W, at 13 ("So we don't view the FLNG itself to be a profit center, but rather just a source of goods sold").) *See In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019).

<u>Fourth</u>, courts in this Circuit have long held that Sarbanes Oxley Act ("SOX") certifications (AC ¶¶ 221-23), "cannot raise an inference of fraudulent intent … without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018). Not only have Plaintiffs failed to allege any facts demonstrating "a concomitant awareness," but Plaintiffs solely challenge statements from NFE's Press Releases and Earnings Transcripts, which are not subject

to SOX certifications.  (*See* AC ¶¶ 109-190; 15 § U.S.C. 7241(a)(1)-(3).)[9]

Finally, Plaintiffs' blanket allegation that the FLNG 1 project experienced "chaos" and "poor planning and oversight" (*see* AC ¶¶ 66, 72, 107), fails to establish that Defendants knew their statements were misleading.  Indeed, vague allegations about "culture" fall short of pleading an inference of scienter.  *See In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 117 (3d Cir. 2018).[10]

## C.    Nonculpable Inferences Are More Compelling

A court must take into account "not only inferences urged by the plaintiff, … but also competing inferences rationally drawn from the facts alleged."  *Tellabs*, 551 U.S. at 314.  Here, Plaintiffs allegations are not only implausible, but the more compelling inference is of nonfraudulent intent.  Defendants repeatedly disclosed that projected timelines and Adjusted EBITDA were inherently uncertain forecasts.  Moreover, though Defendants may have been optimistic about FLNG 1's timing, failing to meet those projections does not provide a compelling inference of fraud.  Crucially, FLNG 1 was ***in fact*** successfully completed and produced LNG— further supporting a nonculpable inference.  *See In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 320-21 (E.D.N.Y. 2024) ("corporate officials do not act recklessly just because

---

[9] Plaintiffs' assertion that a December 2022 SEC letter "reminded Guinta that 'the company and its management are responsible for the accuracy and adequacy of their disclosures'" is irrelevant.  (AC ¶¶ 217-220.)  Indeed, the existence of a SEC inquiry alone is insufficient to raise an inference of scienter.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29, 2014).  Regardless, there are no allegations NFE's 2021 10-K was false or misleading.

[10] "[B]ecause the [complaint] fails to plead scienter plausibly against any individual defendant, … the [complaint] also fails to plead corporate scienter."  *PureCycle*, 2024 WL 5186586, at *15.

executives made optimistic projections that failed to materialize" and "multiple revisions to a plan's timeline do not on their own demonstrate culpable state of mind").

## III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs' failure to plead loss causation independently warrants dismissal of the Complaint.  To sustain a § 10(b) claim, Plaintiffs must allege "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "[P]laintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *ATSI Commc'ns, Inc.*, 493 F.3d at 107. Plaintiffs cannot simply point to a price decline following negative news; they must plead facts demonstrating that the negative news revealed "the truth" about a prior misstatement or omission. *Lau*, 527 F. Supp. 3d at 559.  Plaintiffs here point to four purported corrective disclosures.  (AC ¶¶ 173-90.)  None is sufficient to sustain Plaintiffs' claims.

First, on February 28, 2023, NFE lowered FY 2023 guidance and delayed FLNG 1's mechanical completion date, and on February 29, 2024, NFE disclosed further delays (*id.* ¶¶ 175, 177).  But "[p]recipitous declines in stock prices raise a plausible inference of loss causation only where the price drop follows the disclosure of fraud or a concealed risk." *PureCycle*, 2024 WL 5186586, at *16.  Again, Defendants repeatedly disclosed that these forecasts were subject to change and that the attendant risks surrounding construction timelines could affect the Company's results.  In fact, NFE's stock price ***increased*** following the February 2024 announcement, closing up $3.49 from the prior day's close.  (*See* Ex. X, at 11.)  The fact that "the public failed to react adversely to [this] disclosure" warrants dismissal of Plaintiffs' claims.  *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 343 (2d Cir. 1987).

Second, on July 23, 2024, NFE announced FLNG 1 ***had successfully produced LNG***, that it was "operational," and "expect[ed] to deliver its first cargo in August and enter full production

thereafter" (Ex. P, at 1; AC ¶ 180), and on August 9, 2024, NFE announced that its Illustrative Adjusted EBITDA Goal was below expectations, which was "largely the result of delays in placing our FLNG 1 project into service."  (AC ¶ 182; *see also* ¶ 183 ("While we are disappointed in the delay … it is now operational").)  Announcing FLNG 1's completion certainly could not have revealed the falsity of any prior statements, as it did not reveal any ***new negative*** information.  *See Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 548 F. App'x 16, 17 (2d Cir. 2013).[11]  (*See* AC ¶ 7.)

## CONCLUSION

For these reasons, Defendants respectfully request the Complaint be dismissed with prejudice.

---

[11] Because Plaintiffs have failed to plead a primary violation by the controlled person or that any individual defendant was a culpable participant in a primary violation, their Section 20(a) claim likewise fails.  *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011).

Dated:  New York, New York
        April 4, 2025

                                        /s/ Scott D. Musoff
                                        Scott D. Musoff
                                        Sarah E. Danehy
                                        Jemma M. Curtin
                                        **SKADDEN, ARPS, SLATE,**
                                          **MEAGHER & FLOM LLP**
                                        One Manhattan West
                                        New York, New York 10001
                                        Telephone: (212) 735-3000
                                        Facsimile:  (212) 735-2000
                                        scott.musoff@skadden.com
                                        sarah.danehy@skadden.com
                                        jemma.curtin@skadden.com

                                        Joseph O. Larkin (*pro hac vice*)
                                        **SKADDEN, ARPS, SLATE,**
                                          **MEAGHER & FLOM LLP**
                                        One Rodney Square
                                        920 N. King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 651-3000
                                        Facsimile: (302) 651-3001
                                        joseph.larkin@skadden.com

                                        *Counsel for Defendants New Fortress*
                                          *Energy Inc., Wesley Robert Edens, and*
                                          *Christopher S. Guinta*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this memorandum of law contains 6,991

words and complies with Section III.D of the Individual Practices of Judge John G. Koeltl.


 Dated: New York, New York
       April 4, 2025

                                   /s/ Scott D. Musoff
                                  Scott D. Musoff